UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CROWN POINT PARTNERS LLC; <br> LAUTH PROPERTY GROUP LLC, <br>        Plaintiffs <br>    v. <br> CROWN POINT PLAN COMMISSION; <br> CITY OF CROWN POINT, INDIANA, <br>        Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 2:06 cv 139 <br> ) <br> ) <br> ) <br> ) <br> ) |

OPINION AND ORDER

This matter is before the court on the Motion to Substitute First Financial Bank, N.A. as Plaintiff [DE 64], and the Request for Oral Argument on Motion to Substitute First Financial, N.A. as Plaintiff [DE 65] filed by First Financial on January 26, 2011.  For the following reasons, the Motion to Substitute First Financial Bank, N.A. as Plaintiff [DE 64] is GRANTED, and the Request for Oral Argument on Motion to Substitute First Financial, N.A. as Plaintiff [DE 65] is DENIED.

Background

Crown Point Partners, LLC, owned approximately 56.77 acres of real estate in Crown Point, Indiana.  Lauth Property Group, LLC acquired the rights to develop the real estate for CPP and sought permission from the Crown Point Plan Commission and Common Council to re-zone the real estate from I-1 Industrial to B-3

Business so that Lauth could build a retail development. The Plan Commission and Common Council approved the re-zoning request by a unanimous vote. Lauth filed an application for site development plan with the Plan Commission on August 23, 2005, requesting approval to build the retail center. The Director of Planning and Building for Crown Point issued a letter on September 14, 2005, advising Lauth that the Plan Commission was deferring action on the site plan application so it could review and conduct a public hearing, resolve the Mississippi Street entrance and street location needs with adjoining property owners, and review the number of entrance drives to US 231.

The retail development was intended to have two anchor stores, one of which would be a Wal-Mart. In an October 7, 2005 newspaper article, the mayor of Crown Point stated that a Wal-Mart anchor would not promote the high-quality retail development the city was expecting. The Plan Commission proposed, and the Common Council approved, amendments to the Crown Point Code of Ordinances to establish a special use for retail business structures exceeding 75,000 square feet. Lauth's site plan application then was denied because the proposed Wal-Mart anchor store did not comply with the newly adopted ordinance. Lauth and CPP filed a complaint on March 8, 2006, seeking an injunction and damages.

On April 6, 2010, CPP transferred the real estate to First Financial by a special warranty deed. Although the agreement disclosed this litigation, it represented that the parties had settled and were awaiting dismissals. At some point after executing the agreement, CPP and Lauth stopped the development of the real estate and abandoned all efforts associated with this litigation and the settlement agreement among the parties. That agreement required Lauth and CPP to prosecute their site plan application before the City of Crown Point Plan Commission. First Financial now requests to be substituted as the real party in interest because it is the present owner of the parcel.

## Discussion

Federal Rule of Civil Procedure 25 provides for the substitution of parties if a party has died, become incompetent, has transferred his interest, or if a public officer has been succeeded by someone else. Wright and Miller, 7A Federal Practice and Procedure §1951 (1972). Rule 25 is inapplicable if a change of parties is desired for some other reason than one of the four circumstances to which the rule is addressed, and if inapplicable, it is necessary to consult Federal Rule of Civil Procedure 15 or Federal Rule of Civil Procedure 17. 7A Wright and Miller, §1951 at p. 638. "Rule 25 does not substantively determine what actions survive the transfer of an interest; rather, it provides

substitution procedures for an action that does survive." ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc., 53 F.3d 186, 191 (8th Cir. 1995); Hilbrands v. Far East Trading Co., Inc., 509 F.2d 1321, 1323 (9th Cir. 1975). "The rule is 'designed to allow an action to continue unabated when an interest in a lawsuit changes hands,' rather than requiring the initiation of an entirely new lawsuit." ELCA, 53 F.3d at 191 (citing General Battery Corp. v. Globe-Union, Inc., 100 F.R.D. 258, 261 (D. Del. 1982)). In a diversity action, the court generally will look to state law to determine whether the claim survives after the transfer. Wright and Miller, 7C Federal Practice and Procedure §1952.

The defendants argue that under Indiana law, the cause of action does not survive the transfer of the interest in the property because an agreement involving real estate is a personal right. See The Junction Railway Company v. Sayers, 28 Ind. 318 (1867); Michael v. Mitchell, 73 N.E.2d 363 (Ind. App. 1947). The defendants rely on Junction Railway in support of their position. In Junction Railway, the railroad and Hamilton entered an agreement that the railroad could change the course of a stream of water propelling a milling operation as long as the railroad would provide an alternative channel for the water. Junction Railway, 28 Ind. at 318. Hamilton subsequently conveyed the real

4

estate to Sayers, and the land flooded because the railroad never provided another channel for the water.  The court determined that the right to sue on the covenant to construct a proper channel was a personal right that remained with the covenantee, Hamilton, and did not run with the real estate.  Therefore, Sayers could not enforce the right.  Junction Railway, 28 Ind. at 318.

Whether a covenant will run with the land depends on whether the covenant tends to directly or necessarily enhance its value or render it more beneficial and convenient to those who own or occupy it.  Scott v. Stetler, 27 N.E. 721, 722 (Ind. 1891)("The right to maintain the dam adds to the value of the property, and is, in fact, part of it."); 8 Ind. Law Encyc. Covenants §5.  It must have a logical connection to the use and enjoyment of land. Columbia Club, Inc. v. American Fletcher Realty Corp., 720 N.E.2d 411, 420 (Ind. App. 1999).  Courts have found covenants to pay rent and for the erection and maintenance of fences to run with the land, but not one to pay taxes or to make a stream channel and levees.  Bloch v. Isham, 28 Ind. 37, 1867 WL 2929, *1 (Ind. 1867) (holding that an agreement to pay for a party wall does not run with the land); Midland R. Co. v. Fisher, 24 N.E. 756, 757 (Ind. 1890) (finding that agreement to erect and maintain fence runs with the land); Stover v. Harlan, 154 N.E. 882, 883 (Ind.

5

App. 1927) (finding that agreement to erect and maintain fence runs with the land); Lake Erie & W.R. Co. v. Priest, 31 N.E. 77, 78 (Ind. 1892) (agreement for farm crossing runs with the land); Chicago I. & L. Ry. Co. v. Beisel, 106 N.E.2d 117, 120 (Ind. App. 1952) (agreement for farm crossing runs with the land); Carley v. Lewis, 24 Ind. 23, 1865 WL 1669, *2 (Ind. 1865) (holding that a covenant to pay rent does not run with the land); Graber v. Duncan, 79 Ind. 565 (1881)(finding a covenant to pay taxes does not run with the land); Junction Railway, 28 Ind. at 318 (holding that agreement to make stream channel and levees does not run with the land).

The key inquiry is whether the objective of the covenant concerns the intentions and relationships of the parties, or whether it concerns the use of the land. Scott, 27 N.E. at 722; Columbia, 720 N.E.2d at 420 ("The 'touch and concern' requirement is the only essential requirement for the running of covenants which focuses on an objective analysis of the contents of the covenant itself, rather than the intentions and relationships between the parties"). If the right adds to the value of the property and is in fact part of it, it runs with the land, and successive owners can enforce it. Scott, 27 N.E. at 722. "The clearest example of a covenant that 'touches and concerns' the

land is one which calls for a party to do or refrain from doing a physical act on the land." Columbia, 720 N.E.2d at 420.

The settlement agreement entered by the original parties, Lauth, CPP, and the defendants, concerned the zoning restrictions and what could and could not be built on the property. The ability to construct certain structures on the land clearly affects the value of the property, irrespective of who owns it. Moreover, such an agreement calls for the party "to do or refrain from doing a physical act on the land", and therefore is one of the clearest examples of covenants that run with the land. For this reason, the cause of action would survive the transfer in interest in the property.

It is within the discretion of the court to substitute a party if it finds that allowing the substitution would facilitate the conduct of the litigation. 7C Wright & Miller, §1958. When the plaintiff abandons his interest in the action to his creditor, it is proper and necessary to substitute the creditor so that it can protect its interest. Pacamor Bearings, Inc. v. Minebea Co., 892 F.Supp. 347, 360 (D.N.H. 1995); 7C Wright & Miller, §1958. First Financial, as a creditor and transferee in interest to the property, has a protectable interest in the outcome of this litigation and should be substituted, although its rights do not exceed those of Lauth and CPP in this litigation.

_____

For the foregoing reasons, the Motion to Substitute First Financial Bank, N.A. as Plaintiff [DE 64] filed by First Financial on January 26, 2011, is GRANTED. The Clerk is DIRECTED to substitute First Financial Bank, N.A. as plaintiff in lieu of Lauth Property Group, LLC and Crown Point Partners, LLC in this action.

In light of the court's ruling, it is unnecessary to hold an oral argument, and the Request for Oral Argument on Motion to Substitute First Financial, N.A. [DE 65] is DENIED.

ENTERED this 13th day of April, 2011

s/ ANDREW P. RODOVICH
United States Magistrate Judge